# CHARLESTON.

NORTH WESTERN BANK OF VIRGINIA *v.* HAYS, *et al.*

CAMDEN'S ADM'R *et al. v.* HAYS, *et al.*

Submitted June 12, 1891.—Decided December 22, 1892.

1. DISCRETION OF COURT — CIRCUIT COURT — DECREE— DEATH OF PARTY.

Section 9, c. 127, of the Code, provides: "When, in any suit in equity, the number of parties exceeds thirty, and any one of said parties jointly interested with others in any question arising therein shall die, the court may nevertheless proceed, if in its opinion all classes of interest in the case are represented, and the interest of no one will be prejudiced by the trial of the cause, to render a decree in such suit as if such person were alive, decreeing to the heirs at law, distributees or representatives of such person, as the case may require, such interest as such person would have been entitled to, had such person been alive at the date of the decree." The Circuit Court may, at its discretion, act upon this provision of the Code, and this Court will seldom interfere with the exercise of such discretion. (p. 479.)

2. LIMITATIONS OF ACTIONS—STATUTE OF LIMITATIONS—JUDGMENTS.

The ten years statute of limitations, which in sections 11, 12, c. 139, of the Code, is made applicable to judgments, applies to judgments rendered before the 1st day of April, 1869, at which date the Code took effect (p. 481)

3. LIMITATIONS OF ACTIONS—STATUTE OF LIMITATIONS—CREDITORS' SUIT—REFERENCE—LIEN.

In a creditors' suit, where the object and purpose are to ascertain all the liens upon the debtor's real estate, and their priorities, and to provide for their payment, the statute of limitations will in general cease to run against such liens after the entry of an order of reference. (p. 481.)

4. PRESUMPTION—JUDGMENTS—EXECUTION—SHERIFF.

In the absence of proof to the contrary, and especially after a great lapse of time, an execution, which had gone into the hands of the sheriff and is indorsed by him as levied on personal property of the debtor, will warrant two presumptions: First, that the officer levied on sufficient property to pay the debt; and, secondly, that the property had been sold, and the judgment and execution satisfied. (p 481.)

5. DECREE—ERROR—APPEAL.

   If a decree in chancery erroneously authorizes execution to issue on the foot of the decree, this is error, which may be corrected by an appeal or other direct proceeding, but the decree can not be attacked in a collateral proceeding.   (p. 483.)

6. RES JUDICATA—ESTOPPEL.

   Although the opinion of this Court should indicate that important questions involved in the pleadings had been overlooked, which, had they been considered, might have changed the adjudication, nevertheless the decision, when it has been rendered and has become final, settles the rights of the parties in that particular case, and it may be pleaded as an estoppel.   (p. 483.)

J. BRANNON and R. G. LINN for appellants, cited 9 W. Va. 557; 13 W. Va. 461; 21 W. Va. 325; 1 Greenl. § 113; 7 Am. & Eng. Ency. L. 70; 5 Am. & Eng. Ency. L. 361; 1 Stark. 34; 1 Gratt. 223; 26 W. Va. 708; Free. Ex. § 269; 23 W. Va. 487.

W. E. LIVELY, R. F. FLEMING, and N. M. BENNETT for appellees, cited Code, c. 127, s. 9; 18 W. Va. 291; 21 W. Va. 316; 25 W. Va. 481; Code, c. 134, s. 5; 23 W. Va. 487; Code (1868) c. 166, s. 2; 16 W. Va. 685.

LUCAS, PRESIDENT:

The first of these suits was brought to December rules, 1870, by the Northwestern Bank of Virginia against Samuel L. Hays, Levi Johnson, Peregrine Hays, and Samuel L. Hays, Jr. The object was to enforce the lien of a judgment for nine hundred dollars with interest, *etc.*, obtained against the defendant S. L. Hays in the Circuit Court of Wood county on the 17th day of November, 1856. The plaintiff sought to affix his lien upon a tract of one thousand five hundred and sixty four and one half acres of land lying in the county of Gilmer.

With reference to this one thousand five hundred and sixty four and one half acres it is alleged that, after said judgment was docketed in said county, the said Samuel L. Hays sold one thousand acres of his land to the defendant Peregrine Hays, and subsequently conveyed five hundred and sixty four and one half acres to the defendant Samuel L. Hays, Jr.. which latter tract was afterwards sold by S. L. Hays, Jr. and wife to the said Peregrine Hays. The

bill alleges that the plaintiff knows of no other real estate belonging to said Samuel L. Hays, who is a non-resident, and the prayer is that this one thousand five hundred and sixty four and one half acres of land be subjected to the payment of the judgment aforesaid.

. The exhibits with the plaintiff's bill show that a judgment was obtained in the Circuit Court of Wood county, fall term, 1856, by the plaintiff against S. L. Hays; that it was docketed in Gilmer county on the 26th day of July, 1857; that execution was issued, and a forthcoming bond given, on which judgment was obtained at the November term, 1857; and that executions were issued, the last of which issued on the 28th of March, 1867, which was returned, "No property found." The respective deeds to Peregine Hays from Samuel L. Hays, Sr., and Samuel L. Hays, Jr., were exhibited.

Peregrine Hays answered the bill at the May term, 1884. He denies that the plaintiff is a corporation, and says that it has become extinct by the expiration of its charter. He answers further that one E. T. Stout, sheriff of Gilmer county levied the execution upon sundry slaves of the defendant S. L. Hays, sold the same, and paid the debt. The answer alleges further, that the said S. L. Hays, after the sale of the one thousand acres to respondent, remained the owner of valuable lands in the county of Gilmer, larger in value than the demand of the plaintiff, and claims that the lands last sold should be first subjected. We may here remark that this bill of the Northwestern Bank was not in any sense a creditor's bill.

The second of the suits above mentioned, of Richard P. Camden's administrator against Peregrine Hays and others, was filed at April rules, 1870, and was against Peregrine Hays, Samuel L. Hays, Levi Johnson, Samuel L. Hays, Jr., John E. Hays, and a large number of other defendants, being directed against purchasers from and creditors of the said Samuel L. Hays.

This was a creditors' bill, as appears by the prayer of the bill and its general tenor and effect. It sets up that at the November term, 1867, a judgment was rendered by the Circuit Court of Gilmer county against Peregrine Hays,

Levi Johnson and George W. Silcott in favor of Caleb Boggess and W. E. Lively, commissioners, for the sum of three hundred and eighty dollars and fifty five cents with interest from 21st day of August, 1861, *etc.;* that this indebtedness arose from a decree in a chancery-cause of A. L. Smith against S. L. Hays, *etc.* It then proceeds to enumerate a large number of decrees and judgments against the said Peregrine Hays and S. L. Hays. In the prayer of the bill, it asked for a convention of the creditors of Peregrine Hays, that all the liens against his real estate may be ascertained, and said liens enforced according to their respective priorities.

No less than four amended and supplemental bills were filed by the same complainants, the object of which was to bring in creditors who had been omitted, and to make sundry purchasers of land from said Peregrine Hays defendants, in order that such lands might be subjected.

These two causes were consolidated and heard together. A great many defendants filed their answers, and there was an order of reference made in the two causes.

We may here observe that this appeal is prosecuted by but two of the defendants—Samuel L. Hays, Jr., and Peregrine Hays. A very large portion of the record is omitted, including, doubtless, many decrees and orders. For example, the original order of reference, which we learn from the report of Commissioner Turner was made on the 22d day of August, 1870, is omitted; and we can only infer its character from the word of the commissioner, and the incidental concessions of counsel.

On the 1st day of February, 1883, E. M. Turner was agreed upon by the parties to report upon all matters which had been theretofore referred to other commissioners. On the 23d day of January, 1884, Commissioner Turner returned his report, with a voluminous mass of evidence and exhibits. The defendant Peregrine Hays was given time to examine the report and file exceptions, if he so desired. Accordingly, on the 22d day of May, 1884, said Peregrine Hays filed exceptions, forty five in number, besides general and supplemental exceptions, voluminous in character.

On the 20th September, 1889, the case came on to be heard upon the report of Turner, the exceptions of Peregrine Hays, and the depositions, exhibits and numerous answers. The decree which has been appealed from, and is now before us for review, overruled many exceptions, and sustained but two. After reciting the many judgments and debts which are binding on the real estate of the said Peregrine Hays, the decree appoints W. E. Lively, John J. Davis and N. M. Bennett commissioners to sell the several tracts and parcels of land mentioned in the decree as belonging to the defendant Peregrine Hays, at public outcry, etc.

As before remarked, nobody is prosecuting any appeal from this decree, except Peregrine Hays and S. L. Hays, Jr. Although the exceptions to the report number, including supplement, about fifty, the assignments of error in the petition of the appellants and in the brief of counsel will enable us to decide the questions involved in a comparatively narrow compass. The appellant Peregrine Hays, through his counsel, says he does not waive any of his exceptions, yet this Court could hardly be expected to do more than give careful consideration to those errors in the report, which are specially indicated and enumerated by the petition and brief of counsel.

The first assignment of error is that the court declined to delay the case when the death of certain parties was suggested. In this refusal of the court to continue the cause in order to introduce the personal representatives of deceased parties, we think there was no error, for the reason assigned by the Circuit Court in the order, viz. that the number of parties exceeded thirty and the court was of opinion that all classes of interest were represented, and that the interest of no one was prejudiced. By section 9, c. 127, of the Code, when the number of parties exceeds thirty, the court may proceed, in its discretion, to render a decree as if such deceased persons were alive. In the present case, the Circuit Court having exercised its discretion in pursuance of the statute, we must decline to interfere with its order.

In order to understand the second assignment we may

state that the elder S. L. Hays, now deceased, sold one tract, of five hundred and sixty four and a half acres, to S. L. Hays, Jr., on the 25th day of August, 1865; one to Peregrine Hays of one thousand acres on the 3rd of April, 1866; and one tract of four hundred and fifty acres to John E. Hays on the 30th of December, 1866. All these tracts were sold after large judgments had been docketed against S. L. Hays, the elder, and hence, according to the general rule were liable to be subjected in the inverse order of sale; the last sold being the first subjected.

The decree complained of so adjudicated the principles of the cause; but it directed the tract sold to Peregrine Hays and that sold to S. L. Hays, Jr., aggregating one thousand five hundred and sixty four and a half acres, to be sold first, and referred the cause to a commissioner to ascertain and report in regard to the four hundred and fifty acres sold to J. E. Hays—whether this tract, among others, was liable for the debts of S. L. Hays, Sr., or any of the liens reported in the consolidated causes. This is assigned as error, and no doubt such action would have been erroneous but for the existence of a solemn agreement and covenant entered into between all the children of S. L. Hays, Sr., including John E. Hays, Samuel L. Hays, Jr. and Peregrine Hays.

By this covenant and agreement, entered into the 22d day of August, 1860, the said one thousand-acre tract was sold to said Peregrine Hays at the price of ten thousand dollars, fifteen hundred dollars of which was to go to the grantor, and the residue, in equal parts, to be paid to the children. By this agreement, Peregrine Hays bound himself to pay the debts of Samuel L. Hays, Sr., due in Virginia. Outside this agreement, the evidence is the said tract of land was really worth twenty five thousand dollars. So that for a valuable consideration, in the reduced price of the farm, Peregrine Hays undertook and bound himself to pay off the indebtedness of his father in the state of Virginia, now West Virginia. Peregrine Hays had purchased the tract of four hundred and sixty four and a half acres from S. L. Hays, Jr., and at the date of the decree was the sole owner of the whole one thousand five hundred and sixty four and

a half acres. The Circuit Court, therefore, took the view that he, having bound himself, for a valuable consideration, to pay the debts of the ancestor, should, in a court of equity, be held to his agreement; and in this action of the Circuit Court we think there was no error.

The third assignment relates to the judgment of the Northwestern Bank of Virginia against Samuel L. Hays, Sr. The commissioner, D. M. Turner in his very able and exhaustive report reports this judgment as an existing lien not barred by the statute of limitations and not satisfied or otherwise discharged. At this point we may recur to the general principles which the commissioner lays down as controlling his report:

"*First.* The ten years statute of limitations in the Code of West Virginia (chapter 139, §§ 11, 12) applies to judgments rendered before the 1st day of April, 1869, at which date the Code took effect. *Second.* The institution of a chancery suit upon a judgment, to enforce the lien thereof, stops the running of the statute of limitations as to that judgment. *Third.* In a chancery cause, where the object and purpose of the suit is such as to make it necessary or proper to ascertain all the liens and their priorities and to provide for their payment, the statute of limitations will not run against such liens after the entry of the decree of reference"

These principles or propositions of law are all correct. The commissioner, however, might have added two additional propositions for his own guidance: *First,* judgments not docketed are not liens, as against purchasers for value, without notice. Although he has not announced this principle, the commissioner appears to have been governed by it, as he carefully distinguishes between the docketed judgments and those not docketed. The *second* proposition is one of equal importance, and unfortunately the commissioner has in some instances overlooked its application; and that proposition is that in the absence of proof to the contrary, and especially after a great lapse of time, an execution which has gone into the hands of the sheriff, and is indorsed by him as having been levied on personal property of the debtor, gives rise to two presumptions: *First,* that

the officer has levied on sufficient property to pay the debt; and, *secondly*, that the property has been sold and the debt paid. *Walker* v. *Com.*, 18 Gratt. 13; *Mitchell* v. *Baratta*, 17 Gratt. 445; *O'Brannon* v. *Saunders*, 24 Gratt. 138; *Campbell* v. *Wyant*, 26 W. Va. 702; *Cranmer* v. *McSwords*, Id. 412; *McKenzie* v. *Wiley*, 27 W. Va. 658.

With these general principles in view, we are brought to the conclusion that the debt of the Northwestern Bank was an existing lien, and that the commissioner made no mistake in relation thereto. The date of the judgment was November 17, 1856. On this judgment execution issued, on which a forthcoming bond was given and forfeited, and judgment rendered on that bond. There is no evidence of any executions having been issued upon this forthcoming bond, although upon the judgment itself, apparently, there was a later execution issued after the war and returned; "No property" (1867.) There is some parol evidence tending to show that the judgment was paid by the levy of an execution upon several slaves of the debtor at or about the date of the forthcoming bond. This evidence, however, is based entirely upon verbal statements made by the sheriff, not under oath, and is all excepted to as hearsay.

We regard this exception as well taken. ' The sheriff is an officer intervening between debtor and creditor, and may in some cases, and in a limited sense, be regarded as the agent of both parties. We do not think, however, that a mere oral statement of the sheriff that a debt has not been paid could be introduced as hearsay testimony to the prejudice of the debtor. Nor should his statement, that the debt has been paid, be permitted to be proved as hearsay to the prejudice of the creditor. The suit of the Northwestern Bank was brought on the 20th September, 1869. From the date of the judgment, November 17, 1856, and excluding the period of the war (three years, ten months, and fourteen days) ten years would elapse according to the commissioner on the 20th September, 1870. Perhaps, more accurately, it expired October 1, 1870. At all events, according to the principles laid down in *Shipley* v. *Pew*, 23 W. Va. 387, this judgment was not barred, and the assignment of error was not well taken.

The fourth assignment relates to many other judgments, and covers forty exceptions filed to the report by the appellant Peregrine Hays. We have gone over every one of these forty liens which are assailed in the exceptions, but consider it necessary to notice here specially only those exceptions which we think well taken, or which are of special importance.

There is a decree in favor of A. J. Smith's administrator, which is excepted to on the ground that the decree is not such a decree as would warrant the issuing of an execution. This objection is not well taken, and we notice it because it is urged against several other decrees. If a decree in chancery expressly authorizes execution to issue, when upon the face of the decree itself, and from the proceedings, it is manifest that an issuance of an execution is improper, this is error, which should be corrected on appeal or other direct proceeding for the purpose. *Mason* v. *Bridge Co.,* 20 W. Va. 223. The appellant, therefore, in this case can not attack such execution or decree in this collateral proceeding, any more than he could attack a judgment of a court of law.

The next specific objection taken by the appellant is to the judgment of Jos. Knotts, use of Benjamin Mairs. The date of this judgment is June 28, 1844, and the last execution which issued thereon is returnable to July rules, 1857, and is endorsed : "Levied on one sorrel mare and colt, July 6, 1857. J. N. NORMAN, S. C. C." Certainly, under the principle which we have announced, this debt must be considered as paid in the absence of any other proof on the subject, and the commissioner ought so to have reported.

The next judgment excepted to is in favor of Daniel Shipley, and is erroneously reported by the commissioner as not barred by the statute of limitations. That identical question upon this very debt was brought to this Court on appeal, and in March, 1884, this Court decided that the lien of this judgment had expired. When a right is once litigated and fully determined in the court of appeals, although we may be convinced from the opinion of the court that some important fact or principle has been overlooked, nevertheless the adjudication is a finality, and the question can not be re-opened.

By recurring to the case of *Shipley* v. *Pew*, 23 W. Va. 487, it will be found that Shipley, as surviving partner of Shipley & Howard, on the 16th day of September, 1874, instituted his suit in chancery against Preston Pew, Peregrine Hays and Levi Johnson to enforce the lien of this judgment against the real estate of Peregrine Hays, who had purchased and paid for certain realty theretofore owned by Preston Pew. The defendant P. Hays was the only one who made defence to the suit. He relied on payment and the statute of limitations. On the first point the court decided against him, but on the plea of the statute the Circuit Court decided in his favor, and this Court affirmed this decision. On page 490 of the opinion reported, it will be found that the pending creditors' bill of *R. P. Camden* v. *Peregrine Hays, etc.*, and the *Northwestern Bank* v. *S. L. Hays* and proceedings therein were introduced by the plaintiff in reply to the statute of limitations.

So that everything was before the court which is before us now. The fact that the opinion says nothing about the effect of the order of reference of August 22, 1870, would seem to indicate that the judge, who delivered the opinion, had perhaps overlooked that point. Nevertheless, it is now too late to correct the decision; and, as the appellant has relied upon this adjudication in his exception to the commissioner's report, that exception should have been sustained.

The commissioner audited a debt in favor of T. F. Bantz against Peregrine Hays and others. This judgment was obtained in May, 1856, and execution was issued to October rules, 1856, which execution bore the following indorsement:

"Levied on one horse, Oct. 6, 1856—all the property found to satisfy this *fi. fa.* J. N. NORMAN, S. C. C."

There was *venditioni exponas* returnable to September rules, 1857. Returned endorsed as follows:

"Made by sale of horse this day, as bought by Thos. B. Fell, ten dollars and twenty five cents, Aug. 13, 1857; and one hundred and forty six dollars and seventy six cents made by virtue of the within this day, May 27th, 1848. J. N. NORMAN, S. C. C."

Furthermore, another *fi. fa.* issued to September rules, 1859, which was returned endorsed as follows :

"Levied on three head of horses. R. J. CHENOWITH, S. C. C."

The original amount of this judgment was only one hundred and thirty three dollars and eighty three cents, and, under the principles which we have adopted in relation to old executions, we must presume that the money was made, and the execution was satisfied. We find two other judgments in the same situation. One is a judgment in favor of L. D. May, one of John Gibbons, execution upon which was levied upon one cow in 1857, and indorsed, "Property not sold, for want of bidders." The fact that property levied upon is not sold at one sale or attempted sale, constitutes no reason why we should regard it as released from the lien of execution, and we must presume that it was ultimately sold and the debt paid. For the same reason a small debt in favor of Henry Runnion, execution upon which in 1859 was levied upon two horses and one lot of cattle, must be regarded as discharged.

After minute and careful examination these are the only errors in the commissioner's report and in the decree confirming it, which we have been able to discover ; and for these errors the decree complained of must be reversed, and the cause remanded for further proceedings. It must be understood that the whole action of the Circuit Court up to the point, at which the appeal was taken, is approved and affirmed except in regard to the erroneous allowance and auditing of the judgments we have specified above. It will not be necessary therefore, when the case goes back, to recommit the report; or if recommitted, nothing is to be regarded as having been left open by our decision, and nothing is required to be done, and nothing allowed to be done, except to strike out the judgments which we have specified as erroneously allowed.

REVERSED. REMANDED.