BRIT WELLMAN *v.* HOLSTON HARDWOOD COMPANY *et al.*

(No. 6934)

Submitted May 19, 1931.   Decided June 2, 1931.
(Rehearing denied July 24, 1931).

*Koontz, Hurlbutt & Revercomb*, for plaintiff in error.

*John T. Copenhaver* and *Poffenbarger & Poffenbarger*, for defendants in error.

MAXWELL, JUDGE:

This is a writ of error to a judgment for the plaintiff against the defendants for $2,496.04 on a distress warrant asserting a common law lien for labor performed in the manufacture of lumber.

Plaintiff's contract with Holston Hardwood Company was to cut timber, haul it to the mill, manufacture it into lumber, assort the lumber, place it in stacks, and load it on railroad cars for shipment as and when required. The mill was closed down September 12, 1929, by reason of levies under executions in favor of one or more judgment creditors of the Holston Company. (The record does not disclose what disposition was made of these levies.) Plaintiff's distress warrant was issued by a justice of the peace of Kanawha County the 10th day of December, 1929, and was levied the following day.

Since the lien which the common law gives to a mechanic, artisan or other workman for labor performed by him in the manufacture or repair of goods and chattels for another depends upon possession by such workman of such articles at the time that he undertakes to assert his lien (*Keystone Mfg. Co.* v. *Close*, 81 W. Va. 205), it becomes the primary problem in this case to determine whether the plaintiff comes within that requirement of the common law.

On motion of the defendants the jury was properly instructed by the trial court that before the plaintiff could recover it was incumbent upon him to prove by a preponderance of the evidence that at the time of the levy of the distress warrant the plaintiff was in possession of the lumber upon which the warrant was levied and that he had not at that time surrendered possession of such personalty to any other person. There was a sharp issue of fact on this point. The defendants denied that the plaintiff was in such possession at the time of the levy. They asserted that the plaintiff had left

the property; that he had not put anyone else in charge thereof, and that defendant, American Hardwood Lumber Company, had placed one of its employees at the lumber yard and in charge of the lumber immediately subsequent to the shutting down of the manufacturing operations in September, 1929, and that such possession had continued from that time. But we must respect the jury verdict in this particular if there is substantial evidence to sustain it. The substance of plaintiff's evidence with reference to possession is as follows: "I have not given up possession of anything. I have my stuff up there now, my teams and everything. They wanted a house to move a family into and I objected, I told them I hadn't given up possession and I wouldn't turn it over." The context indicates clearly that the persons here referred to by the plaintiff were representatives of one or more of the defendant companies. Thus we have not only the intention of the plaintiff not to surrender possession, but also the express communication of that intention by him to the defendants. And further, in response to a direct question as to whether he had surrendered possession of the lumber and logs before his distress warrant was levied, the plaintiff answered unequivocally that he had not. It also appears from the evidence that plaintiff remained at the lumber camp, after the mill closed down the 12th of September, until the early part of November when he moved his family away and that after that date, and prior to the levy of the distress warrant on the 11th of December, the plaintiff was not regularly at the camp, though he says that he was there occasionally. He further says that during that period he left his affairs there in charge of one Arville Jones. On the behalf of defendants, it is denied that plaintiff exercised any sort of personal authority over the property after he left the camp in November, or that anybody in his behalf exercised such authority after plaintiff's departure. The issue thus presented was peculiarly one for jury determination. Reasonable minds might differ as to the matter of possession, but inasmuch as there is substantial basis in the evidence for the jury's finding in favor of the plaintiff's contention in this particular, under well settled

rules of law, we would not be warranted in disturbing the jury's finding.

The question next in importance pertains to misjoinder of parties defendant. The three defendants, all corporations, are Holston Hardwood Company, Maples Lumber Company and American Hardwood Flooring Company. In his affidavit for the distress warrant plaintiff averred that the contract under which he claims compensation for services rendered in the cutting of timber and manufacturing of lumber was with all three defendants. The evidence shows that his contract was with the Holston Company only. The other two companies were interested in the lumber by reason of a' certain contract entered into between them and one W. W. Fain who assigned his interest therein to the Holston Company, which contract pertains to' matters of financing and selling on commission. It is insisted on behalf of the defendants that inasmuch as plaintiff's proof showed that his contract was only with Holston Company when his averment was that the contract was with all three companies, there is a material and fatal variance between *allegata* and *probata* and therefore that the plaintiff cannot recover at all in this proceeding. We are of opinion that this position is not well taken. This is primarily a proceeding *in rem,* and that fact must stand as a paramount factor. Procedural problems must be resolved in the light thereof. The lumber against which plaintiff asserted a lien for services performed was taken into custody under the distress warrant. The fact that he performed the services is not disputed. The party for whom he performed such services (Holston Hardwood Company) was before the court and was fully heard in its defense of plaintiff's claim. It does not appear in what possible manner said defendant was or could be prejudiced by the fact that two other companies were brought into the case and put under the necessity of making defense also. Having the property in its custody the court could undoubtedly enforce the lien regardless of whether it was in position to render personal judgment against the person or persons liable for the debt or not. This is materially different from an action of debt or assumpsit wherein a' promise to pay money is the gist of the action. Of course,

in such case the proof of the promise must conform to the allegations pertaining thereto, else the entire basis of the action fails. It is in that class of cases that as a general rule only a joint judgment can be rendered on an allegation of joint liability. *Stewart* v. *Tams,* 108 W. Va. 539, 544.

While it is true that in a proceeding on distress the affidavit and warrant form the basis of the claimant's action and should be considered as standing in the place of a declaration and "governed by the laws of pleading applicable to declarations in debt and assumpsit" (*Hedrick* v. *Pack,* 105 W. Va. 540), it does not follow, because the Maples Lumber Company and the American Hardwood Flooring Company were improperly brought into this proceeding, that the Holston Hardwood Company should be relieved from the consequence of its just indebtedness to the plaintiff. So to hold would be to place a procedural nicety above the very right of the case.

Under the contract between Hardwood Lumber Company and the plaintiff, he was to be paid "Sixteen Dollars ($16.00) per thousand feet board measure and to be measured in accordance with the rules for measuring green lumber, and the parties of the second part shall pay only the logging and manufacturing cost on lumber that is placed on sticks on the yard for sale." An issue of fact was raised as to whether this included "scoots" which is described as a very low grade of lumber,—below No. 3 common, which is said to be the lowest grade of lumber recognized as merchantable in the lumber markets. The net amount of the item involved is $716.10. Though the jury verdict sustained this item we are of opinion that the verdict in that particular is against the preponderance of the evidence. At most, the evidence shows merely an isolated or occasional local sale of this low grade of lumber. The evidence seems conclusive that there is not an open or general market for this grade of lumber as there is for the standard grades. That the parties themselves did not consider the "scoots" as lumber for the manufacture of which the plaintiff was to be paid is indicated by the fact that it was not placed on sticks in the yard as was the better lumber, as required by the contract for lumber for which payment was to

be made. We are therefore of opinion that the amount of the lien against the lumber and the judgment against Holston Hardwood Company should be reduced to the extent of this item. The plaintiff should have opportunity to enter a remittitur in said amount both to the lien and the judgment, and upon failure so to do, both the order fixing the amount of the lien and the verdict and judgment as to Holston Company should be set aside by the trial court and a new trial awarded.

Points of error predicated on the trial court's rejection of certain pleas of set-off tendered by defendants, American Hardwood Flooring Company and Maples Lumber Company, become unimportant in the light of our decision that those two companies were improperly joined as defendants in this proceeding.

The action of the circuit court in directing sale of the lumber and entering personal judgment against Holston Hardwood Company is affirmed subject to remittitur conditions above stipulated. Costs are awarded defendant in error as against the Holston Hardwood Company. As to American Hardwood Flooring Company and Maples Lumber Company, the judgment is reversed and the verdict set aside, with costs against defendant in error. The case is remanded for proceedings in accordance herewith.

*Affirmed in part, on condition; reversed in part;*
*remanded with directions.*

On petition for rehearing:

It is urged that the distress warrant should have been quashed because of insufficient averment in the affidavit on which the warrant was based as to the contract under which the services were rendered. In support of this position reliance is placed on the case of *Hedrick* v. *Pack*, 105 W. Va. 546, wherein the court said: "The procedure (distress for rent) is in the nature of an action for the recovery of a debt in which the defendant may make legal and equitable defense and the property is held pending disposition by the court. The affidavit for the distress warrant and the warrant itself form the basis of the landlord's action. They should be considered as the declaration of the plaintiff in the case and gov-

erned by the laws of pleading applicable to declaration in debt and assumpsit.'' Whether that language may be too broad or whether the same rigidity should be applied to a distraint for services rendered by a workman in connection with personal property of which he retains possession, as is applied to a distraint for rent, need not now be determined, because, in any event, the averments of the affidavit under consideration are sufficiently broad to meet any reasonable requirement or expectation. It is averred that the claim is ''for work and labor bestowed by him (plaintiff), and for materials and supplies furnished by him and used in connection with the manufacture of approximately 1,089,090 feet of lumber and approximately 42,000 feet of logs, which said lumber and logs are now stacked and stored on the mill yard located near the mouth of Marsh Fork, a tributary of Blue Creek, in Elk District, Kanawha County, West Virginia, * * * (itemization follows) and ''that said work and labor was bestowed by him, and the materials and supplies were furnished by him pursuant to a contract between him and the said Holston Lumber Company, * * * and that said lumber and logs were at the time of said manufacture, have been, and are now in the possession of him, the said Brit Wellman * * *.'' The warrant contains recitals covering these averments. In the light of all of which there could have been no uncertainty on the part of any party in interest as to the basis of plaintiff's claim. In the *Pack* case there was uncertainty as to the nature of the alleged inheritance under which certain of the plaintiffs claimed. In the instant case there is no uncertainty. In reply to the criticism that there is no averment of a promise on the part of Holston Lumber Company to pay for the work performed and materials furnished, the answer is that such promise is implied under the contract alleged. As stated in the opinion the case centers around the dominant fact of the possession by plaintiff of the personal property against which he asserts his claims, and therefore there is not the same necessity for averment of promise of payment for services as in an action at law predicated solely upon a supposed promise to pay money.